# 2008 DTA 76

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN**

AYRAM M. AGUILA AVILES
Recurrida

v.

NELSON RIVERA MERCADO, PRESIDENTE, Y VÍCTOR ROSARIO,
MIEMBRO DE LA JUNTA DE DIRECTORES DE LA COOPERATIVA DE AHORRO
Y CRÉDITO PEPINIANA
Recurrente

Núm. KLRA-07-01007

San Juan, Puerto Rico, a 23 de mayo de 2008

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz,
y los Jueces Ramírez Nazario y Piñero González

Rodríguez de Oronoz, Jueza Ponente

### TEXTO COMPLETO DE LA SENTENCIA

Comparecen ante nos los recurrentes Nelson Rivera Mercado y Víctor Rosario Manso y solicitan revoquemos la Resolución emitida por la Junta de Directores de la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC) el 26 de diciembre de 2007. [1] Mediante ésta, la Junta de Directores confirmó una resolución del Presidente Ejecutivo de COSSEC que declaró con lugar una querella presentada contra el señor Rivera Mercado y lo destituyó del cargo de Presidente de la Junta de Directores de la Cooperativa de Ahorro y Crédito Pepiniana (la Cooperativa).

Por los fundamentos que expondremos, se revoca la resolución recurrida. Veamos los hechos procesales que dieron lugar al recurso que hoy nos ocupa.

**I**

El 11 de mayo de 2006, la señora Ayram Águila Avilés presentó ante COSSEC una querella [2] acompañada de una declaración jurada en contra de los querellados-recurrentes Nelson Rivera Mercado y Víctor Rosario Manso. En síntesis, la señora Águila expuso en su querella que los recurrentes comenzaron un ambiente de hostigamiento, persecución y maltrato hacia su persona mientras ésta ocupaba el cargo de Presidenta Ejecutiva de la Cooperativa y que interfirieron ilegal o indebidamente con el ejercicio de sus funciones como tal. Surge del expediente que el 15 de mayo de 2006, COSSEC notificó a los querellados-recurrentes la querella presentada contra ambos. [3]

Así las cosas, el 23 de mayo de 2006, los querellados-recurrentes presentaron ante COSSEC sus respectivas contestaciones a la querella instada. La señora Águila compareció ante COSSEC el 31 de mayo de 2006 para

replicar las contestaciones de los querellados-recurrentes y, posteriormente, el 20 de septiembre de 2006 solicitó la celebración de una vista administrativa. Ante esta situación, el 2 de octubre de 2006, el Presidente Ejecutivo de COSSEC designó una Oficial Examinadora para que presidiera la vista. [4] La misma se celebró el 1 de noviembre de 2006.

Durante la vista, la querellante testificó y presentó testigos a su favor. Surge del expediente que antes de que comenzara el desfile de la prueba, la parte querellada-recurrente argumentó varios asuntos de derecho. Entre éstos, que COSSEC carecía de jurisdicción para atender la querella objeto de este recurso, pues la querellante había incoado un pleito judicial en el que, según su abogado, hizo alegaciones similares a las de la querella y había, además, identidad de partes. La parte querellada-recurrente planteó también que la querellante carecía de legitimación activa para instar la querella, pues a la fecha de la vista administrativa no era socia ni funcionaria de la Cooperativa.

Luego de escuchar los planteamientos de las partes, la Oficial Examinadora declaró sin lugar la moción de desestimación presentada por los querellados-recurrentes y les concedió un plazo para solicitar una reconsideración por escrito sobre esa determinación denegatoria. No surge del expediente evidencia alguna tendente a indicar que la vista administrativa continuó con la presentación de prueba testifical y documental por parte de los querellados-recurrentes. Tampoco surge evidencia de que se celebrara una segunda vista administrativa. Sólo se desprende del expediente que los querellados-recurrentes presentaron un memorando de derecho el 28 de noviembre de 2006 solicitando la reconsideración del no ha lugar emitido por la Oficial Examinadora. Asimismo, la querellante presentó su réplica al memorando de derecho el 12 de enero de 2007.

Posteriormente, el 20 de julio de 2007, el Presidente Ejecutivo de COSSEC emitió una resolución destituyendo al señor Rivera Mercado como Presidente de la Cooperativa de Ahorro y Crédito Pepiniana. Inconforme con tal determinación, y en cumplimiento con la Ley Orgánica de COSSEC, [5] los recurrentes presentaron un escrito ante la Junta de Directores de la referida agencia administrativa solicitando la revisión – término utilizado en la Ley Orgánica de COSSEC– del dictamen emitido por el Presidente Ejecutivo. La Junta de Directores de COSSEC evaluó el escrito presentado y el 27 de agosto de 2007 emitió una resolución confirmando el dictamen del Presidente Ejecutivo. Dicha resolución no estuvo fundamentada, pues no contenía determinaciones de hechos ni conclusiones de derecho que sostuvieran la decisión de la agencia de destituir al señor Rivera Mercado.

No obstante, la parte recurrente presentó ante nos el recurso de revisión de epígrafe y solicitó la revocación del dictamen emitido por el Presidente Ejecutivo de COSSEC. Por otro lado, la recurrida señora Ayram Águila Avilés presentó una moción solicitando la desestimación del recurso alegando que carecíamos de jurisdicción para atenderlo. Los recurrentes se opusieron oportunamente a la referida moción y solicitaron, además, la paralización de la resolución recurrida emitida por el Presidente Ejecutivo de COSSEC.

En aquel momento concluimos que teníamos jurisdicción para entender en el recurso presentado, pues el mismo había sido presentado dentro del término jurisdiccional que dispone nuestro ordenamiento legal. [6] No obstante, nos vimos imposibilitados de ejercer nuestra función revisora ante la falta de una resolución final fundamentada de la agencia recurrida. Por ello, mediante resolución del 30 de octubre de 2007 ordenamos a la Junta de Directores de COSSEC que emitiera una resolución fundamentada con determinaciones de hechos y conclusiones de derecho que pudiera ser revisada por este Tribunal. A su vez, ordenamos la paralización de los efectos jurídicos de la resolución emitida por el Presidente Ejecutivo de COSSEC.

El 16 de noviembre de 2007, COSSEC compareció ante nos mediante moción de reconsideración en la que planteó que nuestra resolución implicaba una duplicidad de los procedimientos ante la agencia. Según alegó COSSEC, una determinación del Presidente Ejecutivo de dicha agencia podía ser revisada por este Tribunal, pues constituía la determinación final de la agencia administrativa. [7] El 10 de diciembre de 2007 denegamos la

reconsideración presentada y concluimos que la posición de COSSEC en el presente caso era antagónica a la asumida en diversos casos anteriores ante este Foro y, a su vez, errada. Puntualizamos que la Ley Orgánica de COSSEC claramente establece que la decisión del Presidente Ejecutivo podrá ser revisada por la Junta de Directores y que la determinación final de ésta última es la que puede ser revisada por el Tribunal de Apelaciones. [8] Por ello, concedimos un término de treinta (30) días a la Junta de Directores de COSSEC para que cumpliera con nuestra orden del 20 de octubre de 2007 y emitiera una resolución final fundamentada.

El 26 de diciembre de 2007, la Junta de Directores de COSSEC compareció en cumplimiento con nuestra orden y presentó una resolución en la que confirmó en su totalidad el dictamen emitido el 20 de julio de 2007 por el Presidente Ejecutivo de la agencia. Así las cosas, el 18 de enero de 2008, la parte recurrente presentó un escrito en el que impugnó la determinación final de la Junta de Directores y levantó varios señalamientos de error alegadamente cometidos por COSSEC. Dicho escrito en oposición fue replicado por COSSEC mediante moción del 10 de marzo de 2008 en la que discutió cada uno de los planteamientos señalados por la parte recurrente.

Posteriormente, el 24 de marzo de 2008, el recurrente presentó una dúplica a la réplica de COSSEC en la que arguyó, en síntesis, que la agencia recurrida incurrió en serias violaciones reglamentarias y constitucionales al destituirlo de su puesto sin formularle cargos y sin darle una oportunidad significativa de defenderse y ser oído. Adujo, además, que la resolución final de la Junta de Directores de COSSEC es ilegal, pues no fue emitida por la Junta en pleno, sino por sólo dos (2) de los nueve (9) miembros que la componen.

## II

Como es sabido, la presunción de corrección que acarrea una decisión administrativa, deberá ser sostenida por los tribunales a menos que la misma sea derrotada mediante la identificación de prueba en contrario que obre en el expediente del caso. *E.L.A. v. P.M.C.,* 163 D.P.R. ___ (2004), **2004 J.T.S. 202**; *A.R.P.E. v. J.A.C.L.,* 124 D.P.R. 858 (1989); *Henríquez v. C.E.S.,* 120 D.P.R. 194, 210 (1989); *Murphy Bernabe v. Tribunal Superior,* 103 D.P.R. 692, 699 (1975). Ello debido a que los tribunales deben evaluar con deferencia las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de éstas. *Rivera Concepción v. A.R.P.E.,* 152 D.P.R. 116, 123-24 (2000); *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.,* 133 D.P.R. 521, 533 (1993); *Asoc. de Drs. Med. C. Salud v. Morales,* 132 D.P.R. 567, 589 (1993).

Al enfrentarse a una petición para revisar una determinación administrativa, el foro judicial deberá analizar si conforme al expediente administrativo: 1) el remedio concedido fue razonable; 2) las determinaciones de hechos están sostenidas por evidencia sustancial en el expediente; y 3) las conclusiones de derecho del organismo administrativo fueron correctas. *P.R.T.C. v. J. Reg. Tel. de P.R.,* 151 D.P.R. 269, 281 (2000); *Misión Industrial v. J.P. y A.A.A.,* 142 D.P.R. 656, 674 (1997); D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* Ed. Forum, Bogotá, 2da. ed., 2001, págs. 533-36.

En cuanto a la revisión de las determinaciones de hechos de la agencia, la facultad revisora del foro judicial está limitada por lo establecido en la sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2175 (L.P.A.U.). La citada disposición, establece que: *"[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo."* Véanse, además, *Asoc. de Vec. H. San Jorge v. United,* 150 D.P.R. 70, 75 (2000); *Domínguez Talavera v. Caguas Expressway Motors, Inc.,* 148 D.P.R. 387, 397 (1999). La evidencia sustancial, por su parte, *"es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión,"* *Ramírez Rivera v. Depto. de Salud,* 147 D.P.R. 901, 906 (1999); *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 D.P.R. 425,437 (1997); *Hilton Hotels v. Junta de Salario Mínimo,* 74 D.P.R. 670, 687 (1953).

Sobre las determinaciones de hechos específicamente, nuestro más alto foro judicial expresó recientemente lo siguiente:

*"[L]as determinaciones de hechos de las agencias administrativas deben ser lo suficientemente definidas. De este modo se cumple el propósito de poner a los tribunales en posición de revisar de forma inteligente la decisión del organismo administrativo y determinar si* **los hechos probados** *por la agencia ofrecen una* **base razonable** *para su evaluación." Padín v. Retiro,* 172 D.P.R. _____ (2007), **2007 J.T.S. 151**. (Énfasis del Tribunal).

Ahora bien, según lo dispone la citada sección 4.5 de la L.P.A.U., *supra, "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal."* El razonamiento detrás de esta disposición, es que los tribunales gozan de peritaje en cuanto a las cuestiones legales, por lo cual, en muchas ocasiones, no está presente el interés que justifica la deferencia al criterio administrativo. *San Antonio Maritime v. P.R. Cement Co.,* 153 D.P.R. 374 (2001); *Miranda v. C.E.E.,* 141 D.P.R. 775, 787 (1996). En cuanto a esto, nuestro Tribunal Supremo ha establecido que:

*"Aun cuando la revisión judicial de las decisiones administrativas depende del estatuto involucrado en cada caso, lo cierto es que tanto la apreciación arbitraria de la prueba por parte del organismo administrativo, como la determinación sobre si las conclusiones de hechos que sirven de base a su decisión están sostenidas por* **evidencia sustancial,** *constituyen una cuestión de derecho." Padín v. Retiro, supra.* (Énfasis en el original).

Por otro lado, la Constitución del Estado Libre Asociado de Puerto Rico de Puerto Rico dispone, en su Artículo II, Sección 7, 1 L.P.R.A., que *"ninguna persona será privada de su propiedad o libertad sin un debido proceso de ley".* Esta disposición tiene sus homólogas en las Enmiendas V y XIV de la Constitución de los Estados Unidos. 1 L.P.R.A.

La cláusula del debido proceso de ley se manifiesta en dos dimensiones: la sustantiva y la procesal. La vertiente sustantiva persigue proteger y salvaguardar los derechos fundamentales de la persona. *Board of Education v. Loudermill,* 470 U.S. 532, 541 (1984); *Plyler v. Doe,* 457 U.S. 202, 210 (1982); *U.S. v. Carolene Products,* 304 U.S. 144, 152-153 (1938). Nuestra Constitución protege estos valores y sus disposiciones se proyectan como los guardianes máximos de estos valores éticos-morales, que resultan ser consustanciales con la naturaleza humana e indispensable para la convivencia en una sociedad democrática. R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico,* Vol. II, pág. 1058 (1988).

El debido proceso de ley es *"resguardo infranqueable contra privaciones arbitrarias de la propiedad".* J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil,* San Juan, **Publicaciones J.T.S.,** 1989, págs. 337-338.

La vertiente procesal le impone al Estado la obligación de garantizar que toda interferencia con los intereses de libertad y de propiedad del individuo se haga mediante un **procedimiento que sea justo y equitativo.** *Rodríguez v. E.L.A.,* 130 D.P.R. 562, 576, 578 (1992); *López Vives v. Policía de P.R.,* 118 D.P.R. 219, 231 (1987). Para que se active la protección de este derecho en su vertiente procesal, tiene que existir un interés individual de libertad o propiedad. *Rivera Santiago v. Secretario de Hacienda,* 119 D.P.R. 265, 274 (1987). Una vez cumplida esta exigencia, es preciso entonces determinar cuál es el procedimiento justo. *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). Diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental sea justo e imparcial. *Rivera Santiago v. Secretario de Hacienda, supra,* a la pág. 274.

El procedimiento debe ser fundamentalmente justo al individuo en la resolución de los hechos y derechos que sirven de base para aquellas acciones gubernamentales que le privan de su vida, libertad o propiedad. *Hernández González v. Izquierdo Encarnación,* 164 D.P.R. ___ (2005), **2005 J.T.S. 44,** citando a Rotunda, Nowak and Young, *Constitutional Law,* Sec. 17.8 (1986).

La jurisprudencia ha definido entornos que todo procedimiento adversativo debe satisfacer para garantizar las

exigencias mínimas del debido proceso de ley, a saber: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en la evidencia presentada y admitida en el juicio. *Rivera Rodríguez v. Lee Stowell*, 133 D.P.R. 881, 888-889 (1993); *Rivera Santiago v. Secretario de Hacienda, supra,* a la pág. 274; *Domínguez Talavera v. Tribunal Superior*, 102 D.P.R. 423, 428 (1974).

Si examinamos dichos requisitos, notamos que el derecho constitucional a un debido proceso de ley **exige** la concesión de vista previa y de una oportuna y adecuada notificación antes de interferir con la libertad o propiedad de una persona. Por tanto, la privación de la libertad o propiedad sin notificación u oportunidad de ser escuchado y de defenderse, se ha considerado contraria al debido proceso y en ocasiones es fuente de responsabilidad civil. *Rivera Rodríguez v. Lee Stowell, supra*, a las págs. 889-890.

## III

Fundamentales principios del debido proceso de ley y la administración de la justicia nos convencen de que erró COSSEC en su proceder desde el inicio de este caso. Veamos porqué.

El caso de autos adolece de un trasfondo procesal largo, confuso y errado. Cuatro errores fueron cometidos. En primer lugar, no hubo una formulación de cargos como lo exige el ordenamiento jurídico aplicable. Surge del expediente ante nos que cuando la señora Águila presentó su querella y declaración jurada ante COSSEC, la agencia se limitó a enviarle **copia de dicha querella** a los querellados-recurrentes sin evaluar la misma ni formular los cargos correspondientes según establece la Ley Orgánica de COSSEC. El Artículo 19 del referido estatuto dispone, en lo pertinente:

*"(a)* ***Cuando se tenga motivos fundados*** *para creer que cualquier miembro de la Junta de Directores, miembro de comité, principal funcionario ejecutivo u otro empleado de una cooperativa asegurada, ha cometido alguna violación o está violando cualquier ley en relación con dicha entidad, o ha seguido prácticas inadecuadas en el manejo del negocio,* ***la Corporación formulará cargos*** *a dicho miembro de la Junta de Directores ... y le requerirá que comparezca ante el representante designado de la Corporación, dentro del término y el procedimiento establecido mediante reglamento, a mostrar causa por la cual no deba ser destituido...*

*(b)* ***Copia de la notificación de cargos será enviada por correo certificado con acuse de recibo*** *a cada miembro de la Junta de Directores de la cooperativa asegurada afectada."* 7 L.P.R.A. sec. 1334q **[9]** (Énfasis nuestro).

Asimismo, el Reglamento de COSSEC, conocido como Reglamento Núm. 6758 del 23 de enero de 2004, establece lo siguiente:

*"Capítulo VIII. "Suspensión y Remoción de Directores, Funcionarios Ejecutivos y Empleados de una Cooperativa Asegurada*

*Sección 1. Causas para la Remoción o Suspensión:*

*a. La Corporación* ***formulará cargos a cualquier miembro de la Junta de Directores ... cuando haya incurrido en una de las causas de separación*** *establecidas en la Ley Núm. 255* ***o se tenga motivos fundados*** *para creer que ha cometido una violación...*

*(...)*

*Sección 2. Notificación de Cargos:*

*a. La Corporación le requerirá al miembro de la Junta de Directores ... **mediante una notificación de cargos debidamente expedida y enviada por correo certificado con acuse de recibo,** a los fines de que comparezca ante el representante designado por la Corporación, dentro de un término y según el procedimiento establecido.*

*b. Contenido de la notificación de cargos: La notificación deberá contener:*

*1. El nombre y dirección postal del afectado.*

*2. Los hechos constitutivos de la infracción o violación.*

*3. Las disposiciones legales o reglamentarias por las cuales se le imputa violación.*

*4. Fecha para la celebración de la vista para mostrar causa ...*

*5. El derecho a estar asistido de abogado si así lo desea.*

*(...)*

*e. **Cualquier procedimiento para suspender o destituir a cualquier miembro de una Junta de Directores,** miembro de comité, principal funcionario ejecutivo o empleado de una cooperativa asegurada, **se regirá por el Reglamento de Procedimientos Adjudicativos adoptado por la Corporación** y la Ley de Procedimiento Administrativo Uniforme, Ley 170 de 12 de agosto de 1988, según enmendada."*

COSSEC alega en sus escritos ante este Tribunal que las referidas disposiciones reglamentarias *"aplica[n] para aquellos casos en que es la propia agencia quien inicia el procedimiento"* **[10]** y que esto *"de ninguna manera puede ser interpretado (como pretende el recurrente) para concluir el absurdo de que en casos en que la acción fue iniciado (sic) por un ciudadano mediante la presentación de una querella, COSSEC venga obligada a presentar otra 'formulación de cargos' adicional..."*. **[11]** No estamos de acuerdo con su posición.

Las disposiciones mencionadas tanto de la Ley Orgánica de COSSEC como de su Reglamento Núm. 6758 claramente establecen el requisito de formular cargos al miembro de una Junta de Directores que se pretenda destituir o suspender. Ni la Ley ni el Reglamento aludido hace distinción entre los procedimientos iniciados mediante querella de un particular y los iniciados *motu proprio* por COSSEC.

En este caso en particular, la querella presentada por la señora Águila ante COSSEC ni siquiera está firmada y tampoco contiene la fecha en que se presentó. Dicho documento no constituye una formulación de cargos que cumpla con lo establecido en la Ley Orgánica de COSSEC y su Reglamento. La agencia pretende que concluyamos que, como se le envió copia de dicha querella y de la declaración jurada suscrita por la querellante a la parte recurrente, se cumplieron con los requisitos del debido proceso de ley en este caso. No podemos avalar su contención. La formulación de cargos, luego de recibida la querella de un particular, no es un *"absurdo"* ni una *"duplicidad"*. COSSEC tiene la obligación estatutaria de verificar si una querella presentada pudiera tener méritos que ameriten la formulación de cargos correspondiente o, si por el contrario, procede su desestimación. El mandato claro de la Ley Orgánica de COSSEC y de su Reglamento es que en todos los casos en que existan motivos fundados o evidencia real de infracciones legales se tienen que formular cargos y notificarse acorde con lo dispuesto en ambos estatutos.

El esquema procesal antes mencionado es parte del debido proceso de ley a seguir en los procedimientos adjudicativos que se lleven a cabo en COSSEC. El deber de COSSEC, al recibir la querella de la señora Águila, era evaluarla y ponderarla. Una vez la agencia determinara que existían *"motivos fundados"* para creer que se habían cometido infracciones a las leyes pertinentes, tenía el deber de realizar la correspondiente formulación de

cargos y notificarla formalmente a la parte querellada-recurrente, según disponen la Ley y el Reglamento de COSSEC. En el presente caso, la agencia incumplió totalmente con dicho esquema procesal violentando así el debido procedimiento de ley que cobija a la parte recurrente.

Por otro lado, es menester señalar que aunque el Reglamento de COSSEC claramente establece en su Capítulo VIII, Sección 2, que *"cualquier procedimiento para suspender o destituir ... se regirá por el Reglamento de Procedimientos Adjudicativos"*, este último, al día de hoy, no existe. De hecho, el Reglamento de COSSEC también dispone que en todos los casos donde se celebren vistas administrativas, las mismas se regirán por el aludido reglamento de procedimientos adjudicativos. Nos parece inaudito que, habiendo transcurrido siete (7) años desde la creación por ley de COSSEC y casi cuatro (4) años desde que se aprobó el reglamento de la agencia, no se haya preparado y presentado ante el Departamento de Estado un reglamento que disponga el procedimiento a seguir en los casos en que la agencia deba adjudicar controversias como la de marras.

En segundo lugar, no se le brindó a la parte recurrente una oportunidad adecuada y razonable para ser oída y presentar prueba a su favor en la vista administrativa celebrada. COSSEC sostiene en sus escritos que fue la propia parte querellada-recurrente la que optó por no presentar prueba. Luego de evaluar los documentos que obran en el expediente ante nos, concluimos que COSSEC no tiene razón.

De la resolución emitida por el Presidente Ejecutivo de COSSEC, surge que la parte querellada-recurrente levantó al inicio de la vista un planteamiento jurisdiccional. Se desprende que la Oficial Examinadora escuchó a las partes y que, luego de haber declarado sin lugar el planteamiento, concedió un término a cada parte para que presentara una moción de reconsideración al respecto. No surge que la vista haya continuado. Tampoco surge del expediente que se haya celebrado una segunda vista administrativa. Lo único que surge de la referida resolución es que, luego del planteamiento jurisdiccional levantado y de conceder un término a las partes, los querellados-recurrentes presentaron su moción de reconsideración con un memorando de derecho para sustentar su posición y que la parte querellante replicó a dicha moción. Luego de ello, el Presidente Ejecutivo emitió seis meses más tarde una resolución destituyendo al señor Nelson Rivera Mercado de su puesto de Presidente de la Junta de Directores de la Cooperativa.

Concluimos que constituye una actuación injusta y contraria al debido procedimiento de ley, el que COSSEC haya adjudicado conjuntamente la reconsideración presentada por los recurrentes en cuanto al planteamiento jurisdiccional y la querella de la señora Águila sin permitirle a los primeros presentar prueba a su favor en una vista con **todas las garantías** del debido procedimiento de ley. Lo correcto hubiera sido que COSSEC, luego de determinar que sí tenía jurisdicción sobre el caso, emitiera una resolución final a esos efectos y citara a las partes para la continuación de la vista administrativa. De esa manera se le hubiese permitido a la parte recurrente declarar en dicha vista y defenderse de las imputaciones en su contra.

En tercer lugar, la determinación final de la *"Junta de Directores"* que revisamos fue tomada por tan sólo **dos** personas, pues uno de los miembros que compone el referido comité de revisión se inhibió. No obstante, **la persona que se inhibió del proceso,** el señor Moisés Méndez López, **es el que firma la resolución recurrida.** No comprendemos cómo si el señor Méndez se tuvo que inhibir del procedimiento, es él quien suscribe el dictamen final de la agencia.

La Ley Orgánica de COSSEC establece que la decisión final del Presidente Ejecutivo será revisada *"por la Junta de Directores"*. 7 L.P.R.A. sec. 1334g(s). Dicha Junta, según el Artículo 6 de la Ley de COSSEC, se compone de nueve (9) miembros, cinco de los cuales constituirán *quórum* y *"todos los acuerdos se tomarán por una mayoría de los miembros que constituyan quórum, excepto en lo que respecta a la adopción de reglamentos..."*. 7 L.P.R.A. secs. 1334c y 1134d.

Del referido articulado se desprende que **todos los acuerdos** que deba tomar la Junta en pleno **se decidirán por una mayoría** de los miembros que constituyan quórum. Esto es, por la mayoría de al menos cinco (5) miembros. La **única excepción** que establece la ley es la aprobación de reglamentos para cuya votación la Junta deberá regirse por lo dispuesto en el inciso (a) del Artículo 7. Como vemos, la revisión de una determinación final del Presidente Ejecutivo de COSSEC que debe realizar la Junta de Directores recae sobre la Junta en pleno.

En este caso, de una Junta de nueve miembros, sólo dos tomaron la determinación de confirmar la resolución emitida por el Presidente Ejecutivo de COSSEC. Ello es, a todas luces, una actuación en contravención a la Ley Orgánica de COSSEC.

COSSEC aduce que aprobó un reglamento interno (Reglamento Número 10) que dispone que las determinaciones finales del Presidente Ejecutivo de COSSEC serán revisadas por un Comité de Revisión compuesto de tres (3) miembros de la Junta de Directores. Dicho reglamento nunca fue presentado ante el Departamento de Estado, por lo que no cumple con los requisitos establecidos en la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2175 et seq.

La agencia recurrida, por su parte, nos señala que *"los derechos de las personas sujetas a la jurisdicción de COSSEC no se ven afectados por esta disposición administrativa"*. [12] No estamos de acuerdo. A todas luces, el reglamento interno aprobado por COSSEC pretende limitar las funciones de la Junta de Directores en pleno afectando los derechos de terceras personas, como los hoy recurrentes. Ello se agrava ante la falta de un reglamento de procedimientos adjudicativos que establezca el procedimiento que debe seguir la agencia antes de tomar una determinación final salvaguardando los derechos de todas las partes involucradas.

En cuarto lugar, COSSEC incumplió con varias disposiciones reglamentarias y estatutarias al no apercibir a los recurrentes de sus derechos de manera adecuada en las resoluciones emitidas por el Presidente Ejecutivo y la Junta de Directores. Todo ello lo discutimos en nuestra resolución del 30 de octubre de 2007 y se suma a los múltiples errores antes señalados cometidos por COSSEC en el presente caso.

No podemos olvidar que todo proceso adjudicativo *"se orienta en los valores superiores de hallar la verdad y hacer justicia"*. *Echevarría Jiménez v. Sucn. Pérez Meri*, 123 D.P.R. 664, 675 (1989); *Berríos v. U.P.R.*, 116 D.P.R. 88, 94 (1985).

Como corolario de todo lo anterior, no podemos dar deferencia a COSSEC ante un procedimiento que, a todas luces, resulta ser arbitrario e irrazonable. Concluimos que el trámite conducido por COSSEC en el presente caso fue errado, confuso y violatorio del debido procedimiento de ley. Por ello, sería una clara injusticia sostener la determinación de dicha agencia.

## IV

Por los fundamentos expuestos, se revoca la resolución emitida por la Junta de Directores de COSSEC el 26 de diciembre de 2007. Se devuelve el caso a COSSEC para la correspondiente formulación de cargos y la celebración de una vista evidenciaria que cumpla con todos los requisitos del debido procedimiento de ley acorde con lo expresado en este dictamen.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones

## ESCOLIOS 2008 DTA 76

**1.** En el recurso de revisión instado originalmente el 26 de septiembre de 2007, los recurrentes impugnaban la resolución emitida el 20 de julio de 2007 por el **Presidente Ejecutivo** de COSSEC. Como explicaremos a través de esta Sentencia, dicha resolución no constituía la determinación final de la agencia. No obstante, surgía del expediente una determinación final, pero no fundamentada, de COSSEC, por lo que no cumplía con el ordenamiento legal vigente. Por ello, asumimos jurisdicción en el caso en lo que la misma era emitida por la **Junta de Directores** de COSSEC para luego ser revisada por este Tribunal.

**2.** Surge del expediente que la querella presentada no está firmada y tampoco fechada. Apéndice del Recurso de Revisión, pág. 51.

**3.** No surge del expediente el método mediante el cual se le envió copia de dicha querella a los recurrentes. Sólo se menciona que *"[e]l 15 de mayo de 2006, COSSEC notificó la reclamación a los dos Querellados"*. Apéndice del Recurso de Revisión, pág. 2.

**4.** No surge del expediente el nombre de la Oficial Examinadora asignada para evaluar este caso. No obstante, debemos señalar que la Resolución emitida por el Presidente Ejecutivo de COSSEC el 20 de julio de 2007, parece ser realmente el informe final de la Oficial Examinadora firmado por dicho funcionario, pues el acápite #8 a la página 3 de la referida resolución señala lo siguiente: *"El 2 de octubre de 2006, el Presidente Ejecutivo ... **nos designó como Oficial Examinadora** para llevar a cabo la vista"*.

**5.** Ley Núm. 114 del 17 de agosto de 2001, 7 L.P.R.A. sec. 1334g(s).

**6.** Aun cuando la agencia concernida falló en apercibirle a los recurrentes de sus derechos procesales, éste sí cumplió cabalmente con el procedimiento administrativo correspondiente al presentar ante la Junta de Directores de COSSEC la *"revisión"* de la determinación del Presidente Ejecutivo, según dispuesto en la Ley Orgánica de dicha agencia. Una vez la Junta de Directores notificó y archivó copia su resolución el 27 de agosto de 2007, comenzó a decursar el término de treinta (30) días que dispone nuestro ordenamiento jurídico para que los recurrentes presentaran su recurso de revisión ante nos. Dicho término vencía el 26 de septiembre de 2007, el mismo día en que se presentó el recurso de epígrafe en la Secretaría de este Tribunal.

**7.** En su moción, COSSEC señaló que nuestra *"errada conclusión...pierde de perspectiva la letra y el alcance del Artículo 9(s) de la Ley Orgánica de COSSEC (sic), 7 L.P.R.A. sec. 1134(s)"*. Dicha argumentación es totalmente contraria a la posición asumida por COSSEC en casos anteriores ante este Tribunal en los que dicha agencia ha sostenido de manera vehemente que *"no existen dudas, que el procedimiento correcto era acudir primero a la Junta de Directores de COSSEC, pues hasta que la resolución de ésta no se emite, no empieza a correr el término en el cual puede recurrirse a la revisión judicial"*. Véase, entre otros, "Moción de Desestimación" presentada por COSSEC en el caso del Tribunal de Apelaciones número KLRA-2007-00727.

**8.** Artículo 9(s) de la Ley de COSSEC, *supra.*

**9.** La Ley de Sociedades Cooperativas, Ley Núm. 255 del 28 de octubre de 2002, aplicable al caso de autos por tratarse de una sociedad cooperativa, contiene una disposición idéntica en su Artículo 5.24. Véase 7 L.P.R.A. sec. 1365w.

**10.** Réplica a *"Moción en Cumplimiento de Resolución de Este Honorable Tribunal y Oposición a Resolución de la Junta de Directores de COSSEC"* del 10 de marzo de 2008, pág. 2.

**11.** *Íd.*, pág. 3.

**12.** Réplica, *ante*, a la pág. 8.